■ In the Matter of Dwayne McM. and Another, Children Alleged to be Neglected. Bessie M., Appellant; Dwayne McM., Sr., Intervenor-Respondent, and Commissioner of the Administration for Children's Services of the City of New York, Respondent. [734 NYS2d 121] —Orders of disposition, Family Court, Bronx County (Myrna Martinez-Perez, J.), entered on or about August 14, 1998, which made a finding of neglect against respondent mother and granted the intervenor father a final order of custody with regard to those children, unanimously affirmed, without costs.

Respondent is the mother of five children by three men. Intervenor father is the natural father of two of the children, Dwayne and Charles, who were born in 1990 and 1991 respectively, to the parents during their marriage. The parties

have not cohabited for several years. The father was awarded visitation in 1993. On March 10, 1997, the Commissioner of the Administration for Children's Services (ACS) filed a petition alleging that the mother had neglected the children (No. NO4256-7/97). ACS was contacted by Montefiore Medical Center after police found five-year-old Charles wandering the streets, asking for his mother, and acting in a bizarre manner at 5:30 A.M. Tests indicated traces of PCP in his system. There also was some indication that he might have ingested crack, which the mother explained originated from a vial left in her home by a former boyfriend. At this time, the mother had already been involved with ACS upon substantiation of a charge that she had left her children alone and unattended in November 1996. In connection with the present petition, the children were temporarily removed from the home and placed in ACS custody in two non-kinship foster homes. At the first hearing, on March 13, 1997, the mother generally denied the allegations of neglect. On the adjourned date of March 25, 1997, the father appeared and moved, *pro se*, for custody of his two children (No. V16408-9/97). At the next hearing date on July 29, 1997, the Law Guardian elicited ACS testimony that the mother cooperated with all referrals and maintained weekly visits with the children. On the mother's motion, the children were then paroled to her custody pending final disposition, but that order was stayed on the Law Guardian's motion on the basis of several factors, including her former boyfriend's history of domestic violence. On August 5, 1997, on consent of all parties, a finding of neglect was entered against the mother under Family Court Act § 1051 (a) on the basis of inadequate supervision, and all five children were paroled to her pending final disposition. A dispositional hearing was scheduled for October 7, 1997.

The parties were back in court, though, on September 11, 1997, at the father's request. The prior evening, Dwayne had fallen from a third-story window, which resulted in a skull fracture, necessitating the placement of a metal plate and his wearing of a special helmet. Evidence regarding the mother's failure to carefully watch the child was elicited, the children were again removed from her custody, and the Law Guardian noted the children's desire to stay together. The father, at the court's suggestion, on September 17, 1997 petitioned for custody of his own children. During a September 23, 1997 conference, the court, for several enumerated reasons, declined to return the children to the mother, but, noting ACS's favorable testimony regarding the father's supervised visitations with his children, directed that a home study be conducted on

the father. At the September 30, 1997 hearing date, ACS and the Law Guardian opposed the father's custody insofar as the children expressed a desire to stay together. The court at that time noted the possible inadequacy of the father's housing, insofar as he lived with his sister, and declined to grant him custody. However, on November 14, 1997, the court granted him unsupervised visitation of his own children. The court then also ordered updated diagnostic and psychological assessments of both parents by Howard Glazer, Ph.D., who had previously conducted evaluations of the parties in 1993.

The next hearing date was August 6, 1998. At that time, the court received a February 9, 1998 ACS investigation and report, and Dr. Glazer's June 12, 1998 report. ACS's report indicated ACS's initial support for the father's custody upon completion of a parenting skills class and one year of ACS supervision, commented favorably on the father's visitation, but indicated that the unemployed father still resided with his sister. The report indicated that the employed mother had started support group counseling and had completed a parenting skills class as well as a five-hour training session on caring for medically fragile children. The report indicated that both of the subject children were classified as special education children, both required medication and both received counseling. ACS now indicated though that, notwithstanding its prior support for the father's custody, it recommended that the children remain in foster care and eventually be returned, together, to the mother's custody. Dr. Glazer's report indicated that both parents had normal psychological profiles although the mother lacked an appreciation for the seriousness of her neglect. Dr. Glazer reported that the foster mother indicated that the children never made negative comments about either parent, and that she observed that the father seemed strict about performing chores and studying and that he limited their access to toys. Dr. Glazer's 1993 profile of the parties had also reflected favorably on the father, who had been suffering from pulmonary ailments at the time which, apparently, had interfered with his continued employment. Dr. Glazer recommended against returning the children to their mother, and in favor of the father's custody with one year's supervision. In a comprehensive August 14, 1998 decision, the court made findings regarding the children's best interests, and awarded the father custody under one year of ACS supervision. As a practical matter, this latter branch of the order of disposition expired on August 14, 1999. The court also granted the mother visitation during which sibling contact could continue. The mother now seeks to reverse this order and to be awarded custody.

On appeal, ACS as well as the Law Guardian now concede that the court was correct in awarding final custody to the father and urge that the final order of custody be affirmed. We agree. Under the circumstances of this case, absent a showing that the father was unfit, he would be entitled to custody. The general rule "has long been recognized that, as between a parent and a third person, parental custody of a child may not be displaced absent grievous cause or necessity * * * An underlying rationale for this rule is that it is presumptively in a child's best interest to be raised by at least one parent unless the parents are determined to be unfit" (*Matter of Ronald FF. v Cindy GG.*, 70 NY2d 141, 144). Moreover, "the State may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of abandonment, surrender, persisting neglect, unfitness or other like behavior evincing utter indifference and irresponsibility to the child's well-being" (*Matter of Marie B.*, 62 NY2d 352, 358). Finally, the one-year supervision by ACS has now passed, without further need for intervention being indicated. To the contrary, as indicated, the Law Guardian's present posture reflects its own updated assessment, which apparently reflects favorably on the custody arrangement. On this record, there is no present cause to interfere with the father's continuing custody of his own children. Regarding the mother, though, she already consented to a finding of neglect and, in any event, this record amply supports Family Court's disposition. We have considered and reject the respondent mother's remaining contentions. Concur—Nardelli, J. P., Williams, Tom, Andrias and Marlow, JJ.